IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:25-cv-000417-CNS-SBP

DILLION COMPANIES LLC, d/b/a KING SOOPERS,

    Plaintiff,

v.

UNITED FOOD AND COMMERCIAL WORKERS, LOCAL UNION NO. 7,

    Defendant.

## ORDER

Before the Court are Defendant United Food and Commercial Workers Union No. Local 7's (the Union's) Motion to Dismiss, ECF No. 11, and Plaintiff Dillion Companies LLC, d/b/a King Soopers' (King Soopers') Motion to Dismiss Counterclaims, ECF No. 15. For the following reasons, the Court GRANTS the Union's motion, and DENIES IN PART and GRANTS IN PART King Soopers' motion. In doing so, the Court presumes familiarity with the allegations contained in King Soopers' Complaint, ECF No. 1, and the allegations in the Union's Counterclaims, ECF No. 11, as well as the legal standard governing the Court's analysis of the parties' dismissal motions, *see, e.g., Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1274–75 (10th Cir. 2023).

1

I.   ANALYSIS

A.  The Union's Motion

In its dismissal motion, the Union's core argument is that "the Complaint . . . fails to plead a breach of Section 8(b) of the [National Labor Relations Act] because none of the conduct alleged amount[s] to 'forcing or requiring' King Soopers" to engage in statutorily prohibited conduct. ECF No. 11 at 7. King Soopers contends its three claims, all brought under Section 8(b), are adequately pleaded, given essentially it has "alleged an overall, detailed pattern of conduct [from the Union that] considered in the aggregate supports the [Union's] unlawful purposes" alleged in King Soopers' three Section 8(b) claims. ECF No. 14 at 8.[1] Explained below, the Court agrees with the Union that King Soopers has failed to adequately plead violations of Section 8(b).

Under Section 8(b) of the National Labor Relations Act, a "labor organization," such as a union, cannot "engage in" or "induce or encourage" individual employees to "engage in" a strike, or "to threaten, coerce, or restrain any person engaged in commerce" where in either circumstance the "object thereof," 29 U.S.C. § 158(b)(4), is one of four "improper . . . objectives," *R.L. Coolsaet Const. Co. v. Loc. 150, Int'l Union of Operating Eng'rs*, 177 F.3d 648, 656 (7th Cir. 1999). *See also Loc. 1976, United Bhd. of Carpenters & Joiners of Am., A. F. L. v. N. L. R. B.*, 357 U.S. 93, 98 (1958) (observing Section 8(b)(4)(A)

---

[1] King Soopers brings its claims under Section 303 of the LMRA. *See, e.g.,* ECF No. 1 at 10–11. Section 303 "provides a private cause of action for violations of section 8(b)(4)." *Durham Sch. Servs., L.P. v. Gen. Drivers, Warehousemen & Helpers, Loc. Union No. 509, a/w Int'l Bhd. of Teamsters*, 90 F. Supp. 3d 559, 565 (D.S.C. 2015). For ease of reference, the Court refers to King Soopers' three Section 303 claims based on the specific Section 8(b) provisions upon which they are predicated. *See, e.g.,* ECF No. 1 at 10–11 (alleging that King Soopers asserts its Section 303 claims under Sections 8(b)(4)(B), (b)(4)(C), and (b)(4)(A) respectively).

"describes and condemns *specific* union conduct directed to *specific objectives*") (emphasis added). Thus, to plead a plausible Section 8(b) claim, an employer must adequately allege two elements: "prohibited conduct and a prohibited object." *Midwest Terminals of Toledo Int'l, Inc. v. Int'l Longshoremen's Ass'n*, No. 22-1330, 2023 WL 4586172, at *4 (6th Cir. July 18, 2023) (citation omitted).

Even assuming King Soopers has adequately pleaded the Union engaged in "prohibited conduct" under Section 8(b)(4)(i) and (ii), it has failed to plead facts—as it must—that plausibly allege the Union had any "prohibited object" under Section 8(b)(4)'s "object" subsections. *See, e.g., Midwest Terminals of Toledo*, 2023 WL 4586172, at *4; *see also* § 158(4)(A)–(D). The Court analyzes King Soopers' three claims individually, explaining in turn why King Soopers has failed to adequately allege the Union had "prohibited object[s]" underlying its conduct and thus violated Section 8(b). *See Midwest Terminals of Toledo*, 2023 WL 4586172, at *4.

   1. Section 8(b)(4)(B)

King Soopers' first claim is premised on the Union's "objective of forcing or requiring [it] to bargain with labor organizations that are not the certified bargaining representative" of its employees." ECF No. 1 at ¶ 42; *see also* ECF No. 14 at 9. In support of this allegation, King Soopers contends that the Union and "other locals named in the Complaint had publicly declared their intended purpose to force industry-wide and group bargaining," *id.*, which amounts to an "improper purpose" under Section 8(b)(4)(B), *id.* at 10. But the Court agrees with the Union that—fatal to King Soopers' claim—Section

8(b)(4)(B) is aimed elsewhere: at "any other employer." § 158(4)(B). ECF No. 11 at 8. Put differently, any employer *other than* King Soopers.

King Soopers seeks distance from Section 8(b)(4)(B)'s statutory language, acknowledging that while this provision contemplates "secondary boycotts," King Soopers' claim plausibly hinges on the statutory provision's disjunctive "or": Its prohibition on "forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees . . ." ECF No. 14 at 12–13 (quoting § 158(b)(4)(B)). But this provision rests on precisely the same language—"any other employer"—that dooms King Soopers' claim. At bottom, Section 8(b)(4)(B) "aims to prohibit a union that has a labor dispute with one employer (the primary employer) from exerting pressure on *another neutral employer* (the *secondary* employer), where the union's conduct is calculated to force *the secondary employer* to cease doing business with the primary employer." *Kentov v. Sheet Metal Workers' Int'l Ass'n Loc. 15, AFL-CIO*, 418 F.3d 1259, 1263 (11th Cir. 2005) (citation omitted) (emphases added). King Soopers' allegations—square pegs—don't fit into this doctrinal round hole.

Further, King Soopers' argument that it is the "other employer" under Section 8(b)(4)(B) because it does not employ members of the other unions referenced in the Complaint—who notably are not parties to this action—falls flat, given this argument is premised on the Union's and unions' alleged misconduct aimed at *King Soopers*—not a secondary employer. ECF No. 14 at 13. And any general allegations about the unions' "attempt[s] to force other employers . . . to negotiate collectively," *id.*, have little to do with any allegation that the Union *itself* "exerted pressure" on a secondary, neutral employer

4

while bargaining with King Soopers, *Kentov*, 418 F.3d at 1263. *See also Int'l Union of Operating Eng'rs, Loc. 150, AFL-CIO v. N.L.R.B.*, 47 F.3d 218, 223 (7th Cir. 1995) ("Union conduct violates section 8(b)(4) . . . . if any object of that activity is to exert improper influence on secondary or neutral parties." (quotations omitted)).

Accordingly, King Soopers' Section 8(b)(4)(B) claim does not survive dismissal.

### 2. Section 8(b)(4)(C)

King Soopers' second claim, brought under Section 8(b)(4)(C), is premised on the Union's "objective of forcing or requiring [it] to bargain with other labor organizations" when the Union is the only union recognized for King Soopers' "unionized employees in Colorado." ECF No. 1 at 11 ¶ 46; ECF No. 14 at 10. According to King Soopers, "other locals" named in the Complaint are not the "certified representative" for King Soopers' employees, and that in light of this the Union has improperly "ceded some or all of its control . . . on contract proposals" to other unions. *Id.* The Court disagrees.

Section 8(b)(4)(C) prohibits a labor organization from "forcing or requiring any employer to recognize or bargain with a particular labor organization as the representative of his employees if another labor organization has been certified" as those employees' representative. § 158(b)(4)(C). The Court agrees with the Union: King Soopers has failed to allege sufficient factual content showing the Union engaged in any practice that rises to this level. *See, e.g.,* ECF No. 11 at 10; ECF No. 16 at 5. At most the Complaint contains allegations of *intent* and *aspiration*. *See, e.g.,* ECF No. 11 at 10; ECF No. 1 at 5 ¶ 22 ("King Soopers . . . objected to [the Union's] announced *intent* to force multi-union bargaining.") (emphasis added); *id.* at 6 ¶ 25 ("[The] Union's *attempts* to force multi-union

5

negotiations were further . . . evidenced by a publicly-posted bargaining update . . . .") (emphasis added). Indeed, in resisting dismissal as to its Section 8(b)(4)(C) claim, King Soopers contends the Complaint alleges the Union "engaged in detailed actions and made statements that evidence *an agreement and intent* to force" it "to bargain with the other locals." ECF No. 14 at 10 (emphasis added). Section 8(b)(4)(C) demands more. *See, e.g., Pepper & Potter v. Loc. 977, United Auto Workers, C I O*, 103 F. Supp. 684, 686 (S.D.N.Y. 1952) ("[Section 8(b)(4)(C)] denounces . . . strikes and boycotts designed to force an employer to disregard his obligation to recognize and bargain with a certified union and in lieu thereof to *bargain with or recognize* another union.") (emphasis added).

Accepting these allegations as true, without additional allegations that, for instance, the Union forced King Soopers to bargain with or *recognize* another union, *see Pepper & Potter*, 103 F. Supp. at 686, the Court cannot conclude King Soopers' Section 8(b)(4)(C) claim is facially plausible. And the Court agrees with the Union that, to the extent King Soopers alleges the Union engaged in any form of "coordinated bargaining" with other unions, or simply *invited* other union leaders to bargaining sessions with King Soopers, this coordination as alleged does not give rise to an impermissible labor practice under Section 8(b)(4)(C). *See* ECF No. 14 at 15, *but see* ECF No. 11 at 11; *Am. Radiator & Standard Sanitary Corp. v. N. L. R. B.*, 381 F.2d 632, 634 (6th Cir. 1967) ("[A] union has the right to select outsiders to sit in and assist a local bargaining committee." (citation omitted)); *Standard Oil Co. v. N. L. R. B.*, 322 F.2d 40, 44 (6th Cir. 1963) ("Absent any finding of bad faith or ulterior motive on the part of the Unions we conclude that it was the duty of the Company to negotiate with the bargaining committees of the Unions at the

6

respective refinery plants even though the temporary representatives were present."); *U. S. Pipe & Foundry Co. v. N. L. R. B.*, 298 F.2d 873, 878 (5th Cir. 1962). Accordingly, dismissal of King Soopers' Section 8(b)(4)(C) claim is proper.

          3. Section 8(b)(4)(A)

King Soopers' third claim, brought under Section 8(b)(4)(A), is premised on the Union's "objective of forcing or requiring [it] to bargain on a joint basis with other employers." ECF No. 1 at 11 ¶ 50; *see also* ECF No. 14 at 10, 12. The Court agrees with the Union that the allegations supporting this claim are insufficient to sustain it.

King Soopers argues the following allegations support its Section 8(b)(4)(A) claim:

- That a purpose of the Union's "coercive actions was also to force King Soopers to bargain on a group basis with other employers, such as Ralphs in southern California," and

- "[T]he UFCW Local 3000" made a "publicly-posted bargaining update" which described a "coordinated plan of action and proposals from our united coalition" and unions' "coordinate proposals and actions."

ECF No. 1 at 6, 9 ¶¶ 25, 39. But allegations regarding a publicity statement and the *purpose* behind an allegedly "coercive action" fall short of Section 8(b)(4)(A)'s statutory demand. § 158(b)(4)(A) (prohibiting "forcing or requiring"). *See also* ECF No. 11 at 13. Especially where, as the Union argues, the Court must consider whether its allegedly unfair practices violated Section 8(e). *See* ECF No. 11 at 13; *Am. President Lines, Ltd. v. Int'l Longshore & Warehouse Union*, 611 F. App'x 908, 910 (9th Cir. 2015) ("An alleged violation of Section 8(b)(4)(ii)(A) necessarily rises or falls on a violation of Section 8(e)." (quotation omitted)). And given, as discussed above, King Soopers has failed to allege

7

the Union engaged in any unfair *secondary* activity, for this same reason its Section 8(b)(4)(A) claim must be dismissed. *Marrowbone Dev. Co. v. Dist. 17, United Mine Workers of Am.*, 147 F.3d 296, 301 (4th Cir. 1998) ("The language of § 8(e) is broad, and taken at face value, it would appear to prohibit any agreement that forces an employer to cut off business dealings with *an outside party*.") (emphasis added); *Ohio Valley Coal Co. v. Hudson*, 913 F. Supp. 1056, 1060 (S.D. Ohio 1996) ("Section 8(e) reaches only agreements with secondary objectives.") (citing *NLRB v. International Longshoremen's Ass'n, AFL–CIO*, 473 U.S. 61, 74 (1985)).

\* \* \*

For the reasons set forth above, King Soopers fails to allege plausible claims based on any Section 8(b)(4) unfair labor practice. Accordingly, dismissal of its Section 303 claims against the Union under Rule 12(b)(6) is proper.

### B.  King Soopers' Motion

King Soopers seeks dismissal on the grounds that the Union's counterclaims are preempted, *see San Diego Bldg. Trades Council, Millmen's Union, Loc. 2020 v. Garmon*, 359 U.S. 236 (1959), and the Union fails to state plausible counterclaims under Federal Rule of Civil Procedure 12(b)(6), *see generally* ECF No. 15. The Union resists, arguing that—given the factual allegations underlying its counterclaims—its counterclaims are not *Garmon* preempted, and its plausible claims survive Rule 12(b)(6) dismissal, *see generally* ECF No. 23. Explained below, the Court agrees with the Union that its claims are not preempted. However, the Court concludes that only the Union's bad faith claim survives King Soopers' dismissal motion.

8

### 1. Preemption

This case arises under federal labor law. *See* ECF No. 1 at 1; ECF No. 13 at 3. Unique preemption rules attend to it. *See, e.g., Garmon*, 359 U.S. at 244; *Glacier Nw., Inc. v. Int'l Bhd. of Teamsters Loc. Union No. 174*, 598 U.S. 771, 776 (2023). And under these rules King Soopers bears the burden of showing the Union's counterclaims are preempted. *See id.*

The Union wants to sidestep *Garmon*'s preemption demands altogether because, in its eyes, "*Garmon* preemption does not apply to claims under Section 301 of the [Labor Management Relations Act] because [the Union's claims] are federal, not state, claims." ECF No. 23 at 5; *see also* ECF No. 13 at 3 (alleging counterclaim jurisdiction under "Section 301 of the Labor Management Relations Act"); 29 U.S.C. § 185. The Court agrees with the Union that, reading its Counterclaims in their entirety, *see Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1207 (10th Cir. 2022), the Union's counterclaims are properly characterized as Section 301 claims that are not subject to *Garmon* preemption and over which the Court may properly exercise subject matter jurisdiction.

The Union plainly alleges that its counterclaims "aris[e] out of an agreement" between it and King Soopers, and that the Court "has jurisdiction over" its counterclaims pursuant to Section 301. ECF No. 13 at 3 ¶ 3. And even if the Union was not so explicit in its "Statement of Claims" as to whether its counterclaims arise under federal or state law, *id.* at 9–11, the Court must inspect them to determine if they are actually state law, rather than federal Section 301, claims. *See, e.g., Ortega v. New Mexico Legal Aid, Inc.*, 643 F. App'x 774, 777 (10th Cir. 2016). This inspection confirms the Union advances

9

Section 301 counterclaims. Fundamentally, the Union alleges King Soopers violated the "Return to Work and Peaceful Relations Agreement" (the Agreement) entered into between the parties following the January 2025 strike. ECF No. 13 at 6 ¶ 18; *id.* at 7 ¶ 22; *id.* at 9 ¶ 28 ("By setting an arbitrary April 12 deadline and then reducing its offer, [King Soopers] violated the express provisions of the Return to Work Agreement that prohibit [it] from unilaterally implementing its offer, or any part thereof, before the expiration of the 100 day stand down."); *id.* at 2.

To be sure, the Union acknowledges the Agreement is not a "traditional collective bargaining agreement." ECF No. 23 at 6. But Section 301 does not narrowly demand that the Union plead King Soopers' violation of a collective bargaining agreement. *See Retail Clerks Int'l Ass'n, Loc. Unions Nos. 128 & 633 v. Lion Dry Goods, Inc.*, 369 U.S. 17, 25–28 (1962); *Drywall Tapers & Pointers of Greater New York, Loc. 1974 v. Operative Plasterers' & Cement Masons' Int'l Ass'n of U.S. & Canada*, 537 F.2d 669, 672 (2d Cir. 1976) ("It is well established that [Section] 301(a) comprehends other labor contracts besides collective bargaining agreements." (citations omitted)). It is enough for the Union to plead King Soopers violated a labor contract—in this case, the Agreement—which it has done. *See* § 185(a); *Drywall Tapers*, 537 F.2d at 672. Against the backdrop of the Union's allegations and governing decisional law, King Soopers' contrary argument that "[n]one of the breaches alleged by the Union relate to the conditions of employment or employee rights that originated through the CBA or the [Agreement]" fails to persuade, ECF No. 27 at 3, as does its argument dismissal is proper because the Union does not

10

allege a violation of any collective bargaining agreement, *id.* at 4–5. *Cf. Drywall Tapers*, 537 F.2d at 672.[2]

Accordingly, given the Union's well-pleaded allegations that King Soopers violated the Agreement—a labor contract—the Court concludes the Union's counterclaims are federal Section 301 claims over which the Court may properly exercise subject matter jurisdiction. *See Ortega*, 643 F. App'x at 778 ("[Section] 301 claims create federal jurisdiction."). Indeed, King Soopers' leading preemption argument appears to acknowledge as much. *See* ECF No. 15 at 4 ("The Union's Counterclaims are Preempted by the NLRA *and LMRA*.") (emphasis added); *id.* at 5 ("[T]he LMRA expressly governs claims for violation *of contracts* between an employer and labor organization . . . ." (quotations omitted) (emphasis added)). And because the Union's counterclaims are federal Section 301 claims, the Court need not determine whether *Garmon* preempts them. *See Smith v. Evening News Ass'n*, 371 U.S. 195, 201 (1962) ("[P]etitioner's action arises under [Section] 301 and is not pre-empted under the *Garmon* rule.").

The Court makes an additional observation. In its reply, King Soopers argues the Union's Section 301 "dispute" is "subject to a grievance and arbitration process." ECF No. 27 at 4. But "this argument was made for the first time in the reply brief and is thus waived." *Lopez v. Colvin*, No. 12-cv-01293-WYD, 2013 WL 5201009, at *5 (D. Colo. Sept. 16, 2013) (citation omitted). The impropriety of indulging it is underscored by precisely the

---

[2] King Soopers relies on many cases that concern Section 301 claims and alleged bargaining agreement violations. *See, e.g.,* ECF No. 27 at 3. It goes too far to suggest these cases *limit* Section 301's reach only to bargaining agreement disputes, in light of both the statute's plain language—"violation of contracts"—and clear Supreme Court guidance. § 185(a); *Retail Clerks*, 369 U.S. at 28 ("It is enough that this is clearly an agreement between employers and labor organizations significant to the maintenance of labor peace between them.").

line of decisional law King Soopers cites. *See* ECF No. 27 at 5 (citing *United Steelworkers v. Am. Mfg. Co.*, 363 U.S. 564 (1960)). Even assuming King Soopers put forward the putative arbitration agreement in its motion—and it didn't—given that such an agreement could create a "presumption that [the] dispute is arbitrable" it is wrong to consider such an argument in reply when the Union had no opportunity to rebut it or the presumption of arbitrability. *Nat'l Nurses Org. Comm., Missouri & Kansas/Nat'l Nurses United v. Midwest Div. MMC, LLC*, 70 F.4th 1315, 1318–19 (10th Cir. 2023) (quotations omitted). For these reasons, the Court declines to consider King Soopers' arbitration argument, especially where the Court may properly exercise subject matter jurisdiction over the Union's Section 301 claims. *See Ortega*, 643 F. App'x at 778; *Smith*, 371 U.S. at 201.

   2. Plausibility

King Soopers argues that the Union has not pleaded plausible claims for relief because the Union "does not include a single allegation" that King Soopers "unilaterally put any offer it made into practice." ECF No. 15 at 7. The Union contends that it has plausibly alleged both that King Soopers breached the Agreement, and that King Soopers breached the implied covenant of good faith and fair dealing. *See* ECF No. 23 at 7–10. The Court agrees with King Soopers that dismissal of the Union's breach of contract claim is proper, but declines to dismiss the Union's implied covenant claim.

*First*, King Soopers argues the Union has not plausibly alleged a breach of contract because, under the terms of the Agreement excerpted in the Union's Counterclaims, King Soopers was prohibited from "unilaterally implement[ing] any offer it makes during [the parties'] negotiations or any portions thereof." ECF No. 13 at 7 ¶ 20; *see also* ECF No.

15 at 7. King Soopers continues: The Union does not allege that it "unilaterally put any offer it made into practice," *id.*, but rather alleges that King Soopers violated the Agreement by "setting an arbitrary April 12 deadline and then reducing its offer," ECF No. 13 at 9 ¶ 28. Fundamentally, King Soopers argues that, even accepting the Union's allegations as true, at most it *withdrew* an offer and "did not implement" one in a manner that violated the Agreement. ECF No. 15 at 7. The Union argues that King Soopers "implemented its arbitrary 'Offer A' deadline, breaching the implementation clause of the Agreement." ECF No. 23 at 8. The Court disagrees.

The Union characterizes King Soopers' alleged conduct—giving the Union a deadline to accept—as unilaterally implementing a "portion of an offer it made during" negotiations. *Id.* (quotations omitted). But the alleged nature of King Sooper's Agreement breach does not amount to the unilateral *implementation* of any offer, or even the implementation of a portion of an offer made by King Soopers. King Soopers, in essentially providing an alleged acceptance deadline to "Offer A," ECF No. 13 at 8 ¶ 25, did not "alter the very terms and conditions that [were] the subject" of the parties' negotiations, *Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. N.L.R.B.*, 501 U.S. 190, 198 (1991). *See also Merrill v. Briggs & Stratton Corp.*, No. 10-CV-700, 2015 WL 5172943, at *5 (E.D. Wis. Sept. 2, 2015) (concluding that complaint "adequately plead[ed] that changes to *retiree dental and vision benefits* violated the LMRA") (emphasis added); *N.L.R.B. v. Parents & Friends of the Specialized Living Ctr.*, 879 F.2d 1442, 1444, 1455 (7th Cir. 1989) (affirming NLRB order concluding employer "violated the [LMRA] by refusing to negotiate with the union [and] unilaterally implementing *employment changes*"

13

by "making changes in employees' work schedules without bargaining with the union over the changes" (citation omitted) (emphasis added)).

Accordingly, King Soopers' alleged conduct does not amount to the impermissible, unilateral implementation of any portion of an offer that gives rise to a breach of contract claim. *See, e.g., id.* Dismissal of the Union's first claim for breach of contract is proper.

*Second*, King Soopers seeks dismissal of the Union's implied covenant claim because its alleged misconduct is "directly addressed by an express contract provision" in the Agreement, and therefore "cannot be varied by the implied covenant." ECF No. 27 at 9; *see also* ECF No. 15 at 7. The Union argues that it has plausibly alleged King Soopers breached the implied covenant of good faith and fair dealing because its actions were "inconsistent with the purpose of the agreement and the reasonable expectations" of the parties, and therefore its claim survives King Soopers' dismissal motion. ECF No. 23 at 9. The Court agrees with the Union.

Implied covenant claims may be brought in the alternative to breach of contract claims under Section 301. *See, e.g., Davis Wire Corp. v. Teamsters Loc. Union No. 117*, No. C14-47 MJP, 2014 WL 1338664, at *2 (W.D. Wash. Apr. 2, 2014) (citations omitted). The implied covenant "requires that neither party act to frustrate the object of" their contract." *Loc. 3-7, Int'l Woodworkers of Am. v. DAW Forest Prods. Co.*, 833 F.2d 789, 795 (9th Cir. 1987) (citation omitted); *see also Davis Wire*, 2014 WL 1338664, at *2.

As a preliminary matter, the Court disagrees with King Soopers that the Union's breach of contract claim, and the allegations upon which it is based, foreclose the Union's ability to assert its implied covenant claim. *Compare* ECF No. 27 at 9, *with Davis Wire*,

14

2014 WL 1338664, at *2. Particularly where the Court concludes that the Union has failed to plausibly allege King Soopers breached the Agreement. Having dispensed with this argument, the Court agrees with the Union that, reading its Counterclaims in their entirety and drawing all inferences from them in the Union's favor, See Chilcoat, 41 F.4th at 1207, the Union has plausibly alleged that King Soopers had an "improper intent" and "frustrate[d] the object" of the Agreement and failed to act in good faith by setting an arbitrary, exploding deadline for its offer and subsequently revoking its offer based on that deadline. Davis Wire, 2014 WL 1338664, at *2; Local 3-7, 833 F.2d at 795; ECF No. 13 at 10 ¶ 39. Accordingly, the Union's implied covenant claim survives dismissal.

The Court makes a final observation. In urging dismissal of the Union's implied covenant claim, King Soopers states its alleged conduct giving rise to this claim "is *directly addressed* by an express contract provision, and thus, cannot be varied by the implied covenant." ECF No. 27 at 9 (emphasis added). One hears echoes of King Soopers' preemption argument, in which it appeared to acknowledge the Union's claims are brought under the LMRA. See ECF No. 15 at 4 ("The Union's Counterclaims are Preempted by the NLRA *and LMRA*.") (emphasis added). Simply put, close reading of King Soopers' dismissal briefing reveals contradictions that do it no favors. And as to its implied covenant argument, the notion King Soopers' alleged conduct is addressed by an express Agreement provision would be tantamount to the concession the Union plausibly alleged a breach of contract claim.

But, in ruling on King Soopers' dismissal briefing, the Court is under an obligation to "apply [the law]" properly. In re Longhorn Sec. Litig., 573 F. Supp. 255, 270 (W.D. Okla.

15

1983) (citations omitted); *Smith v. Turner*, 48 U.S. 283, 291 (1849) ("[J]udges are bound by the most solemn obligations to decide according to the law as they find it."); *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991) ("When an issue or claim is properly before the court, the court . . . retains the independent power to identify and apply the proper construction of governing law." (citations omitted)). And, consistent with King Soopers' *breach of contract* briefing, the Court remains persuaded, in light of governing decisional law, that the Union has failed to plausibly allege a breach of contract claim. The Court discusses this tension in King Soopers' briefing to urge King Soopers, should any additional round of dispositive motion briefing occur, to resolve how it understands the Union's counterclaims and its own behavior, and avoid the impression it lacks such an understanding.

## II.    CONCLUSION

Consistent with the above analysis, the Union's Motion to Dismiss, ECF No. 11, is GRANTED. King Sooper's Motion to Dismiss Counterclaims, ECF No. 15, is DENIED IN PART and GRANTED IN PART. Both parties may, should they choose to do so and believe they can cure the above deficiencies in their Complaint and Counterclaims, file amended pleadings within 21 days of this Order.

DATED this 6th day of August 2025.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge